Alright, here to eat, here to eat, here to eat, this Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Michael J. Burke presides. Please be seated. We launch the second case of the morning, call 211-0187, Stephens State of Illinois v. John K. Lipscomb-Bey. On behalf of the Appalachian, Mr. Stephen B. Wilkin. On behalf of the people, Mrs. John Wilkin. Mr. Wilkin may proceed. Good morning, Your Honor. I'm here on behalf of Mr. Lipscomb-Bey. And our brief, Your Honor, raises three issues. And as to the last one, which is kind of an issue involving a redundancy of the verdicts, I don't anticipate discussing that because the State has conceded error there. And as to the second one, which involves the interplay between compulsory joinder and the Speedy Trial Act, there is pending in the Illinois Supreme Court a case, People v. Hunter, and I just thought I'd give an update to the Court on that. I talked to counsel for Mr. Hunter. And the Court is awaiting a reply brief by the State in that appeal. And it probably would be orally argued in January. At least that's what's anticipated. So I want to start off with the first issue. And that involves whether the State has proven my client guilty beyond a reasonable doubt of attempt, armed official criminal, specifically whether he attempted to sell a firearm. And I think the issue boils down to really whether a relatively brief automobile trip and my client's arrival at a hotel to sell a nonexistent gun at a price which apparently is contemplated to be negotiated later is a substantial step. What's the standard of review for us? I think the standard is de novo. And I might even add a case to the list, one list of cases I have in my reply brief, about de novo review, and it's People v. Sven, S-V-E-N, it's from this Court. And that involves the issue about lewdness in a child pornography case.  And I say this, I say that it's de novo review because, well, in addition to all the cases I have, because a substantial step has to be strongly corroborative of criminal intent. And it has to be, or another way of saying it, of the firmness of the actor's intent. And bad intent, and my opponent seems to make a lot of this, bad intent alone is inadequate. And that's illustrated by this new case. What was he doing there? What got him to drive from Chicago to that location after that telephone conversation? Wasn't that his first step to get there? Well, it's, again, we're going to have a meeting apparently. And in the conversations on the phone, he says, we will talk about the sale. So is that not his first substantial step? That is mere preparation, and it is not substantial because if he had met Avery, if he had sat down with Avery, he still didn't have a gun, and he still had to talk about terms. Well, couldn't we, couldn't you argue that the telephone conversation was mere preparation and the drive to this location was beyond mere preparation and that was the first step? Well, I don't want to put too fine a point on it, but the telephone conversation, recall, the idea to sell a gun was not my client's idea. It was Avery's idea because Avery had difficulty with the law enforcement authorities. She was dealing with this prostitution charge. So the genesis of this plan is not even with my client. It's with somebody else. He went along with it, didn't he? Well, yeah, he went along with it, but in terms of, to determine how firm he is in his resolve on this, just keep in mind that it's not even his idea, all right? And, of course, if he's really serious about selling a firearm, then it would help to have one because, you know, on the street you have to have a product. Things are delivered COD. You know, promises ain't cutting it. And, you know, I mean, look at the, I rely a lot upon the Smith case, and I do, because I think it's very, very similar to this. And I was the lawyer for Mr. Smith, Mr. Shazard Smith, and in that case the man was, took a gun, got on a Metro train, went from Chicago to Highland Park. From there he got in a cab, went to Waukegan, and looked for a jewelry store. And he couldn't find a store, so he directed the cab driver to go back to the Metro station. And at that point he robbed the cab driver and flattered that he was abandoned by the police, and he subsequently admitted that he was looking for this jewelry store. And a unanimous panel of this court and a unanimous Illinois Supreme Court said that that's not a substantial step because we don't know how close the offender got to committing the offense. We don't know where the jewelry store is. Well, he couldn't find the jewelry store in Smith, correct? Not only could he not find it, but it wasn't even aware that, it wasn't clear whether it even existed, according to the facts of both this, the decision by this court and the Supreme Court. In the present case, your client was able to find where this individual was who he wanted to sell the gun to. I mean, Mr. Smith got himself into some substantial trouble. Well, actually, you have to say find loosely because he never met her. And the police, you know, there was this welcoming committee there when he drove into the parking lot. And I realize that that's not really his act, but, you know, part and parcel of this attempt law is that if the police strike too early, you know, sometimes they're out of luck. I mean, if I go into a hardware store and buy some matches, if the police decide to arrest me there for an attempt to arson, I think they've, you know, it's premature. They haven't shown enough. Well, if they had a telephone conversation with an undercover agent or somebody talking to you about burning something down, maybe we'd have a little different facts. Well, yeah, we might have a little different facts, but we still wouldn't have a step. How do you distinguish this from the sex cases wherein they go there and they have a welcoming committee? How is this different? I think it's easy to distinguish those cases because in this case there's a sale of an item and you don't have the item. The offenders, when the offender in those sex cases meets the, well, anticipates meeting the minor, there's no instrumentality that's going to bring, you know, cause the offense to take place. All they have to be is together. That's all they need. They just need each other to commit the crime. But also in those cases, don't you really need some sex talk prior to? I mean, the offender can't say, hey, I want to talk to you or I want to come and see you, and then go there and have a welcoming committee. You need some exchange back and forth. Well, there was in the Scott case. In the Scott case and the Patterson case, there was a considerable amount of, like, sex talk. So don't we have somewhat of that talk? In this case wherein the defendant is saying, okay, yeah, I've got a gun or I can get you a gun. Let me come and talk to you. How is this? How do we distinguish that from those sex cases? But, you know, if the man had said, look, I can set you up with a revolver, I can set you up with an automatic, I can give you a 9mm or a baby 9 or all the street talk, you know, about firearms, and, you know, I can get you to use one or I can get you a brand new one, that might be the equivalent of the sex talk in Scott and Patterson. But all this is is a plan to make a plan. And your plans are not punishable under a temp law because the police would be running themselves ragged, running down people with bad ideas or bad motivations, and you run the risk that you're going to be arresting a lot of people who are really innocent of anything. How do you distinguish Terrell? In Terrell, if I remember correctly, the offenders there were kind of lying in wait, but they had assembled, I think, a mask or some of the instrumentalities of the crime to commit the robbery. Again, I can't stress enough, if you don't have a gun for a sale, it's pretty hard to make a sale. I mean, I cited, I added, made a final motion to add authority, and it was the Rosa case. It was a federal case involving an individual who was convicted of attempt to deliver heroin. And in that case, there are, I believe, 11 conversations between a DEA agent and the offender there. And one face-to-face meeting at a mall. And the court said, in all these conversations, all that Mr. Rosa says is, you know, I've got to talk to my suppliers, and I've got to talk to so-and-so, and maybe I can get you this, and maybe I can get you that. I've got to talk to somebody else about getting the stuff. But he never indicated he had the stuff. He never indicated how much he was going to sell it for. And it was nothing but, like, talk. Did your client ever indicate that he had to talk to somebody else to get this gun? No. The record doesn't reveal that. He indicated he could deliver the gun. He said that, yeah, that was true. You cited the Smith case. What standard of review did the Supreme Court use? They didn't explicitly say what the standard review was. Well, what they said was that a substantial step has to be determined by evaluating the facts of each case. That sounds seriously like the Collins standard to me. I'm sorry? That sounds seriously like the Collins standard to me, the language in the Smith case. Well, there are numerous others. I cited them in my brief, so I don't know the names of them. But where courts have held that the standard of review is de novo when reviewing whether there's a substantial step in the attempt setting. I would concede that the Illinois Supreme Court didn't recite a standard review. That was before it became practice to talk about standards of review. Certainly, I would think if they were confronted with that issue today, given the case law I cite, they would say it's de novo. Do you think the decision turns on that? Do you argue that if it's a Collins standard that we would then affirm? Oh, if you use any standard you want, I would. Because I can't find a case anywhere involving a purported attempt to sell something where the actor doesn't have the product and we just have these nebulous conversations about price and terms. This is nothing more than an idea to commit a crime. Is this a per se illegal act that they discussed? I was discussing that with counsel before this argument. If my client had had a Floyd card and he had a gun, of course, if he had a gun, we wouldn't be talking about attempt. And of course, if he had a Floyd card, we wouldn't be talking about a crime either. But merely possessing a gun and proposing to sell it to somebody isn't per se illegal, to answer your question. That's my view. As to the second issue, well, what's important for this first issue, I think, was that the entirety of the substantial step is my client's arrival at the hotel. This is important for the second issue because my opponent seems to take the position that the arrival of my client at the hotel is a separate act than the act of possession of the residue on the scale and the bullet lying on the back seat of the car. And that these are separable. If, on the other hand, though, they seem to take the position that the possession of the residue and the scale are subject to compulsory joint. If that's true, then if you also take the position that his arrival is the key here, then there are three events that take place all at the same time. He arrives at the hotel and he's in possession of the bullet on the floor in the back seat and he's in possession of the residue on the scale. If we were to take a hyper-technical view of the possession offenses under the Compulsory Jointer Act, you would say that the possessory offenses, that is, the bullet and the scale, could have been charged separately. Because proof that he has the scale does not prove that he has the bullet. And proof that he has the bullet doesn't prove possession of the scale. And so I think my opponent's position is kind of a major concession here. If you truly believe that the bullet and the residue are not separately chargeable, they're subject to jointer, then I don't know why his arrival at the hotel, which they stress is the substantial step, that's the completion of the attempt, is not also subject to jointer. There's absolutely no doubt in this case that the prosecution was aware of my client's plan to sell a gun. That's why he has this welcoming party. That's why there's police engagement in the first place. The prosecution even said this in their motion in the trial court in opposition to my client's motion to dismiss. I realize I'm running out of time. I just want to finish a few things. This, to me, is no different than the facts in Hunter. Because in Hunter, the offender's in a vestibule. They see he's dealing drugs. There is cannabis on a stairway in the vestibule, and there's two handguns. And the offender there is initially charged with possession of the cannabis. And then subsequently there is added gun-related charges beyond the 160-day term. And the circuit court says, no, you should have joined the gun-related charges with the cannabis charges because there's three concurrent, or there's concurrent acts of possession there, and that they are essentially inseparable. And if my opponent's right, then not only is Hunter wrong, but the Illinois Supreme Court's decision in Quigley is wrong. Because in Quigley there was involved a misdemeanor DUI and an aggravated DUI. The felony DUI was based upon a misdemeanor DUI, which resulted in an accident and injury. And the court made the point that you can't separate those events. And it's only by some type of hyper-technical interpretation of the events that you have separate offenses that could be tried, a private charge, separately. Your time is up. You have time for rebuttal. Thank you. Ms. Kripke, you may proceed. May it please the Court, John Kripke on behalf of the people of the state of Illinois, counsel. First of all, I'd like to thank the Court for moving the date of the adjournment for me. I appreciate that. Ms. Kripke, before you get started, I think the big question is how do you distinguish criminal charges? In the Smith case, Smith never found the object that he wanted. He came up, there was no prior discussion with anybody except with himself. I'm going to commit a burglary of this jewelry store. And he couldn't find it. He came up and that was it. There was no place for him to burgle. He didn't know where he was going. In this case, the first step is not getting there. The first step was the discussions that he held with Avery over the phone. That was step one, just like in Patterson and Scott. There's this ongoing communication between the parties. And as the Court said, if you just have the sex talk online and you never get in the car and go out to find the child you think you're communicating with, that's it. That's the end of it. No crime has been committed. But in this case, he got in the car. It wasn't like a short drive. He drove from Chicago to Downers Grove. He called again from the car to confirm that he was coming. He checked again regarding the directions. They found a piece of paper in the car with the directions written on them. He intended, and then when they came and the welcome meeting party greeted him, the police came to him and said, what are you doing here? And he said, I'm here to meet Avery. Well, what are you meeting Avery for? He said, well, she needs protection. He said something along the lines that he was there to give her the protection that she needed. Is what the police knew at that time a crime? Yes. Why? Because it was an attempt, because he had discussed it with Avery. Let's assume, did the police know whether or not he could validly possess a weapon at that time? I don't know. The record doesn't tell us. It doesn't show affirmatively that they knew he could not. Is that correct? That's true. But it doesn't show affirmatively that he could not. It doesn't show anything. The last time I checked, the burden is on the state to prove things. True. All right. Now, is that an inherently illegal act? Based on what the police knew, is that an illegal act? I don't know if, according to Mr. Wilchin, one can sell guns between parties legally if both parties have FOID cards. Again, if the police know they were dealing with a woman who was a prostitute, who probably, again, the record does not show whether or not she could legally have an FOID card. Would it be fair to say that based on what the police knew at the time the defendant pulled into the parking lot, they didn't know whether Avery or the defendant had a valid FOID? I don't know. Because the record doesn't demonstrate it. I just don't know. I can't answer it. We can do it either way. I simply don't know. I'm sorry. I didn't mean to cut you off. I simply don't know. Would you agree that with respect to cases where there's conversation, either sex offenses or conversation about sale of a controlled substance, that it is inherently illegal to transfer cocaine under any circumstances, I suppose, unless you're a physician with a prescription, and it is inherently illegal to have sex with a 15-year-old, assuming that you're over a certain age? Those are inherently illegal acts. Correct. And that certainly was clear from the case law that talks about that. Would you also agree to that? Yes. Okay. Regardless of whether or not he had a FOID card or he had a weapon, he didn't have a gun. When he got there, he didn't have a gun. So how could he have completed the act or even made a substantial step towards the commission of that crime if he didn't have a weapon? Well, because he attempted to do it because he had made what I'm saying is the substantial steps, which revealed this attempt, and actually going out there. Do you think perhaps the police officers acted prematurely? Apparently, in this case, they did. It's hard to tell. I mean, he said, I'm coming with this gun. And she said, meet me at the back door. He went to the back door. What else was he doing there? In Patterson, the court made it a point to say that the defendant in that case took every possible step that he could in order to commit the offense short of actually committing the offense. Here, it doesn't seem, I mean, without the gun in the car, how can we say that this defendant took every possible step to deliver this gun to his warden, I believe the name was? Well, but Giles says mere preparation is not a substantial step, yet the offense may be committed at some point short of the last deed prior to committing the intended offense. So the last thing missing here is... We have to determine how short. How short. How short. What else remains? For this defendant to have completed the act of the sale of a gun, what else did he have to do? He had to, you know, exchange the gun for money. And there was no money and there was no gun. I don't know if there was no money. Well, there was no Avery. But there was Avery substitutes there. There was no agreement as to type of gun or price for gun. That is true. So no agreement as to type of gun, no agreement as to price of gun, and no gun. And we've taken a substantial step toward the commission of delivering a gun, that if we both had FOIA cards, two private parties can sell each other a handgun. Apparently, although I'm not sure about that. But when you have a sex act, you don't have to specifically say, okay, well, agreed, the act would be illegal because it's with a minor. But you don't have to say specifically, you know, what type of sexual acts you're going to commit with the minor before you do it. You don't. If the minor was even going to agree to pay for it, you don't have to say, you don't have to have that information in there. But in Patterson, they did set out the specific acts in most of the sex cases. They have to have some, for lack of a better term, dirty talk with the person. Doesn't the Terrell case say that the defendant has to commit a substantial step that requires that the act put the defendant in dangerous proximity to success? How close was the defendant to success in this case of selling that weapon? He didn't have a weapon, so how close was he? But on the other hand, let's say Avery had come down or somebody acting in lieu of Avery. And they had said, you know, Avery's upstairs. She couldn't come down. She sent me down. And the cop takes out a roll of bills. And he says, no, what kind of gun were you selling me? And the guy would have said, I don't have the gun with me, but it's over here in the trash bin on the other side of the mall. Or I have to go back to Chicago and get it. Or I have a friend of mine who's really dying to get rid of this gun that he's had for years, and I can't possess guns because I'm a felon, but my friend just wants to get rid of this gun, and he's not a felon, so he'll bring it out tomorrow. I mean, we're talking about a lot of hypotheticals. We're talking about a lot of hypotheticals. Or my friend who has the gun, or I drove out here before and I put the gun in another car that's sitting here in the parking lot, and I'm going to go over to that car and get the gun for you. So, I mean, there's all kinds of scenarios that could go on. It could be right there. It could be he stashed it in the bushes. Well, they didn't find it in those bushes. You know, I'm... But we don't have any of that, Ms. Griffith. We don't have any of that. So in light of the fact that we don't have any of that, that's, I think, can come right back to where we started here. How do we distinguish this case from Smith? I mean, I think you had more, probably, in Smith than they have here. I think so, too, because Smith, he didn't even know where he was going. He's just kind of driving around aimlessly. He couldn't even locate where he wanted to go. He came out here. He asked for directions. I need to know where I'm coming. He had the directions written down. He told the police who he was there to meet and why he was there to meet her. And that makes it more of a substantial step than what happened in Chester Smith. As to the standard of review, I think it is a reasonable doubt Collins' standard of review. The problem is, not the problem, but the issue before you would be that I think it's de novo review of the substantial step is embedded within that, even though Chester Smith's, but the case law, though, says you have to look at it on the facts and circumstances of each case. And I want to go back to the case of People v. White, the one with the food stamps. That guy could have committed the offense. He had the food stamps on him. But the man to whom he was trying to sell the food stamps didn't know that. And he just kept pestering him, and the guy kept saying, no, no, no, I don't want to do it. And even in the end, the court said, we're not hanging our hat on the fact that the food stamps were in the guy's pocket and they actually could have. They said, we don't care. Yes, it happened, but we don't care. What we're looking at is the fact that he repeatedly attempted to get this guy to give him the money. And that makes White no different than this case. How many times did he ask to see Avery? There were three phone calls that day. And even though Avery may have initiated, I think it's irrelevant, rather, that she approached him versus him. I mean, he could have just said, no, no, I can't do that. And that would have been the end of it. But he called her back. And he called again from the car to tell her, I'm driving such and such a car. And then they found the directions there. What's inherently illegal about the two of them meeting, even to talk about the sale of a gun? What's illegal about that? Why is that a crime based on what the police know? Based on what the police know? Nothing. Based on the facts of the case? Based on what the police know? I don't know. The answer is, again, to that, I don't know. I retract saying nothing because I don't know what the police know. And based on the facts of the case, it's inherently illegal because he is a convicted felon. And that's why it's illegal. Because he's a convicted felon. He's not allowed to do that. Just like you're talking hypothetically with what you think is a 15-year-old having sex with a 15-year-old is inherently illegal. And by the fact that he is a convicted felon. What else do you have to bring to a meeting with a 15-year-old in order to have sex with her or him? Yourself. But you don't need the gun, so to speak. You do need the gun, so to speak. Here you don't need the gun. Maybe he knew Avery was a prostitute and he came to have a sexual encounter with her. And that's why he didn't have the gun. Maybe he was going to negotiate further. Her services? It's still illegal. It's still a price. It's still illegal because he is not allowed to possess that gun. But he didn't. But what I was asked was what was inherently illegal about the conversation? What was inherently illegal about the conversation was the fact that he is what we know. He's a convicted felon, and there's no way he is allowed under law, if it's okay to sell a gun, between two lawfully registered FOID people. It's inherently illegal in this case. Okay, Ms. Kripke, how about this? You call me up and you say, I'm going to buy some cocaine. And I say, okay. Now, it's inherently illegal to have cocaine, correct? Correct. So I come to the location. You say, meet me here. I got money. I come to the location. I don't have the cocaine. I have nothing. I say, oh, and the cops say, hey, you're meeting Joan Kripke here. And I say, yeah, I'm supposed to meet her here. They find no cocaine on me. Is that an attempt? Yes. Even if you haven't negotiated the amount of cocaine or the price for the cocaine? Yes. So you're not meeting to negotiate, you're meeting to actually deliver the cocaine. Yes. That isn't there. Cocaine is illegal. No, but the cocaine that isn't there. The cocaine is not there. I don't have anything. But the impossibility of completing the offense is not relevant in terms of the attempt. But you still need to make a substantial step towards the completion and the commission of that offense. I've made no substantial step. I come there, but I don't have any cocaine on me. It's inherently illegal. The statute says a person commits the offensive attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of the offense. It's sort of circulate, but it's any step. So the decision is, what is this any step? Is there enough here? And I'm saying, yes, there is. Do you agree that meeting for further negotiations is not a substantial step? Not necessarily. I thought some of the cases talk about that. Delvecchio and some of the other cases talk about that. Some of them do, but then some of them also show some consideration is given. I mean, the cases are all over the board. There's always little bits of elements in each one, and nothing is exactly the same as this, except, I would say, the White case. Because the court never took into account the fact that he had those food stamps in his pocket. He just said to the guy, come on, I want to sell them to you. Come on, I want to sell them to you. The guy said, no, I don't want to. May I address the issue of the joinder issue? Very, very briefly. We stand on our brief on this. And the difference in this case is that the bullet and the cocaine on the residue, that was an act of possession. And in the Hunter case, it was all acts of possession. Because the person was constructively possessing the guns, the drugs, whatever, in that foyer. That's how the court decided this. This case is more like one where you have separate acts going on that don't come derived. Quigley is also where they said the act of driving the car, it doesn't matter, misdemeanor or felony, they're driving the car. But the whole substantial step, all of that, the communications between the defendant and Avery, that's a whole sideshow to this guy actually getting. I mean, if he had come in a car. Do you think Boyd was correctly decided? Which case? Boyd. I don't remember Boyd, I admit. That was the case with the home invasion and the aggravated battery. And the state actually agreed that the joinder applied. I don't understand why they agreed that. There was the, I mean, everything derived. I don't know if I would necessarily argue that. Because you do have some very distinct acts separated from, I mean, the whole act of entering the home then would apply in this case. So he gets in a car and every crime he commits along the way has to be joined. I don't know if I would necessarily agree with that. And there's different mens rea standards involved in some of these other crimes. And so I'm not sure that I would agree that all of those things necessarily derive from the same act. Just like, well, it's a little bit different, but when you have multiple sex acts that occur, by statute they say you can charge them separately.  But that's statutory. But again, if this guy had gone on a whole spree of committing different crimes along the way, starting with getting in mom's car and this stuff was in the car, and they were broken up. Let's say he left Chicago, he drives a couple blocks, commits a couple crimes in Cook, gets outside. Now he's in DuPage, he stops, he grabs a McDonald's on the way, and finally gets here and tries to sell the gun. Do we have to join all of those? Just because he's in the car and he's on this long drive, I don't think so. All right, thank you, Ms. Griffin. Thank you. Mr. Wilkins, may we proceed with the rebuttal argument? The only point I wanted to make is that the issue is not just whether there's a stem, it's whether it's substantial. And I'd like to contrast, if they were charging my client with conspiracy where they only needed an act in furtherance, they might have a different situation. But in that situation, then we'd be complaining about whether there was an agreement. And right now we really have nothing more than an abstraction when it comes to the agreement because we have an agreement to have a discussion about a subsequent agreement. And on another note, my opponent made the point that this is a, you know, about how far this trip is. The court can probably take judicial notice of geographical facts using MapQuest, and I did. And if you get on I-290 from the westernmost point of Chicago and you go to Downers Grove, it's about 60 miles. Maybe I'm off a bit, so maybe it's 20 miles. But that's a trip that, like, commuters make, like, every day, back and forth. That's a very short trip. There's nothing substantial about that trip. And that's the only point I wanted to make. Thank you, counsel. Thank the attorneys for their evidence. The case will be taken under advise that we are adjourned.